IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DANIEL B. COHEE, :
:
       Plaintiff, :
:
v. : Civil Action No. 14-1476-RGA
:
COMMISSIONER ROBERT COUPE, :
et al., :
:
       Defendants. :

Daniel B. Cohee, Howard R. Young Correctional Institution, Wilmington, Delaware.
*Pro Se* Plaintiff.

**MEMORANDUM OPINION**

June 16, 2015
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Plaintiff Daniel B. Cohee, an inmate at the Howard R. Young Correctional Facility in Wilmington, Delaware, filed this action pursuant to 42 U.S.C. § 1983. He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 6). The Court proceeds to review and screen the complaint (D.I. 2) pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(a).

Plaintiff raises six claims. Claim one alleges that Defendants Delaware Department of Correction Commissioner Robert Coupe and HYRCI Warden Steven Wesley implemented a new policy on October 22, 2014 for inmates housed in the disciplinary housing unit (*i.e.*, the hole) that denies inmates, including Plaintiff, access to all personal and legal incoming and outgoing mail, to and from their family, friends, and religious ministries.[1] (D.I. 2, ¶¶ 14-15).

Claims two and six raise conditions of confinement claims. Claim two alleges that, on October 22, 2014, Wesley deprived Plaintiff of the use of a mattress for fourteen hours per day, from 8:30 a.m. to 10:30 p.m. (*Id.* at ¶ 16). Plaintiff alleges the denial of the mattress caused him severe shoulder, hip, neck, and lower back pain. Claim six alleges that on October 22, 2014, Wesley created a policy that deprived Plaintiff of all cleaning supplies and hygiene products, which forced him to live in unsanitary

---

[1] Encompassed in claim one, is the allegation that Plaintiff was not given unlimited access to paper and pencils. He states, however, that he was given the choice to have access to paper and pencil one hour every day in lieu of using the one hour for recreation or to shower. The pencil and paper allegations do not rise to the level of a constitutional violation.

1

conditions for twenty-three days, from October 22, 2014 until November 14, 2014. (*Id.* at ¶ 33).

Claim three alleges that, during his entire incarceration, while under the care of Defendant Correct Care Solutions,[2] Plaintiff has been denied treatment and surgery for his right shoulder. (*Id.* at ¶ 16). Plaintiff alleges that he was told by prison medical staff that an MRI and x-ray of his right shoulder were normal, but he believes he was lied to because an outside physician told him that he required surgery on the right shoulder. Plaintiff was denied the surgery while housed at the HRYCI in 2010, the James T. Vaughn Correctional Center in 2011, and, again in 2014[3] at the HRYCI. (*Id.* at ¶ 17). Plaintiff alleges that the HRYCI medical staff is currently "being negligent to his shoulder injury." (*Id.* at ¶ 18).

Plaintiff has submitted sick call slips and grievances since October 24, 2014, seeking medical care and complaining of negligence. As of December 3, 2014, medical and/or mental health had yet to see Plaintiff. Investigation of his grievances revealed that for three days, Plaintiff was administered Motrin but nothing stronger. (*Id.* at ¶¶ 19, 20). Plaintiff alleges that CCS medical staff is deliberately indifferent to his medical needs, that his shoulder has been neglected since April 11, 2010, and that on October 24, 2014, his shoulder worsened due to the mattress issue. Plaintiff alleges that he needs stronger medication and surgery on his shoulder. (*Id.* at ¶ 22). Plaintiff alleges that the CCS staff had plenty of opportunities to solve his medical issues. (*Id.* at ¶ 25).

---

[2] Correct Care Solutions was the medical service provider for the Delaware Department of Correction from July 1, 2013 until June 30, 2014. On July 1, 2014, Connections began providing medical services for the DOC.

[3] The complaint does not provide the exact date of the denial of surgery in 2014.

2

Claim four alleges that on October 4, 2014, Plaintiff asked to see mental health, submitted sick calls slips, and asked to be placed on medication. (*Id.* at 22). Plaintiff explains that he was "forced off" Wellbutrin in July 2014 and was not provided a similar substitute medication by medical staff. Plaintiff has not seen by anyone from mental health from October 4, 2014 to the date of the Complaint, December 3, 2014. Plaintiff has been diagnosed as bi-polar and manic depressive. He was hospitalized for a suicide attempt in 2010, "is supposed to be on medication," and is "feeling mentally unstable." (*Id.*) The mental health staff conducts daily cell checks, and, daily, Plaintiff has told Defendant Tamira that he needs to see a psychiatrist but is told the psychiatrist is busy. (*Id.* at ¶ 23). Defendant Michelle M (a psychiatrist or a nurse practitioner), came onto Plaintiff's pod to see other inmates. Plaintiff alleges that when he asked Michelle if he could see her, she responded that she was busy and walked off. Plaintiff alleges that he has suicidal thoughts but did not tell staff, because he did not want to go on psychiatric close observation status in the suicide watch room. Plaintiff alleges Tamira and Michelle were negligent in neglecting his mental health needs. Plaintiff alleges that he should again be prescribed Wellbutrin or a similar medication, and that the staff of Defendant Connections had plenty of opportunities to solve his mental health problems. (*Id.* at ¶¶ 24-25).

Plaintiff wrote to Coupe on two occasions regarding his medical and mental health treatment. Plaintiff alleges that Defendants two John Doe nurses, Michelle, Tamira, Wesley, Coupe, CCS, and Connections were deliberately indifferent to his mental health and medical needs in violation of his constitutional rights. (*Id.*).

3

Claim five alleges that when Plaintiff was transferred to the hole on October 4, 2014, he was denied access to his religious book and was advised that he could only have a Bible or the Qur'an. (*Id.* at ¶ 26). Plaintiff is neither a Christian nor a Muslim, but is a Thelemite.[4] Several of Plaintiff's religious books were stolen from his personal property when he was transferred to the hole. Plaintiff wrote to Wesley regarding the issue on October 15, 2014, but no action was taken. (*Id.* at ¶ 27.) Plaintiff spoke to Defendant Lieutenant Gibson on October 22, 2014, who explained to Plaintiff that only a Bible or the Qur'an was allowed in the hole and refused to allow Plaintiff to have access to his religious book. (*Id.* at ¶ 28). Plaintiff wrote to Coupe on November 16, 2014 regarding the issue. (*Id.* at ¶ 29). On November 26, 2014, Plaintiff was given access to his book by Sgt. Clark. (*Id.* at ¶ 32). Plaintiff alleges that even though he was given access to the book, this does not excuse the fact that he was denied his right to worship for fifty-eight days. (*Id.*). Plaintiff alleges that Coupe, Wesley, and Gibson violated his constitutional right to exercise his religious beliefs. (*Id.* at ¶¶ 30-32).

Plaintiff seeks injunctive relief, as well as compensatory and punitive damages.

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93

---

[4] *See* http://www.thelemapedia.org/index.php/Thelema.

4

(2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94.

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. When determining whether dismissal is appropriate, the court must take three steps: "(1) identify[] the elements of the claim, (2) review[] the complaint to strike conclusory allegations, and then (3) look[] at the well-pleaded

5

components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679. Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Plaintiff alleges that Coupe and Wesley created policies that denied him access to incoming and outgoing mail, personal and legal, while he was housed in the hole. Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted only for legitimate penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 89 (1987). A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation. *Morgan v. Montayne*, 516 F.2d 1367 (2d Cir. 1975). In the instant case, Plaintiff alleges that he was denied mail from October 22, 2014 until November 1, 2014. Plaintiff will be allowed to proceed with the mail interference claims against Coupe and Wesley.

Plaintiff alleges that he was deprived of a mattress for fourteen hours per day, from 8:30 a.m. to 10:30 p.m. He alleges that Wesley created a policy that did not allow him to have cleaning supplies and hygiene products for twenty-three days. A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S.

6

1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Although the conditions in the hole may be harsher than those in minimum security, they do not constitute a denial of "the minimal civilized measures of life's necessities." *See, e.g., Williams v. Delo*, 49 F.3d 442, 444–47 (8th Cir. 1995) (holding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld). The conditions of confinement claims found in Claims two and six do not rise to the level of a constitutional violation, are frivolous, and will be dismissed.

Claims three and four raise medical and mental health needs allegations. Plaintiff alleges that the John Doe nurses, Michelle, Tamira, Wesley, Coupe, CCS, and Connections violated his constitutional rights and have been negligent in providing medical and mental health treatment because they have not provided the treatment he believes is necessary. Plaintiff wrote to Coupe regarding his medical and mental health treatment.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v.*

7

*Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-40 (2d Cir. 2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. at 107. Moreover, allegations of medical malpractice are not sufficient to establish a constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

When a plaintiff relies upon a theory of *respondeat superior* to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that CCS and /or Connections is/are directly liable for the alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [CCS or Connections] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because *respondeat superior* or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

With regard to John Doe nurses, Michelle, and Tamira, to the extent Plaintiff alleges negligent conduct or that they are not providing him the treatment Plaintiff believes he needs, the claims fail to state a claim upon which relief may be granted. With regard to CCS and Connections, the Complaint does not allege a policy or custom of deliberate indifference on their behalf. In addition, Plaintiff alleges that CCS denied surgery to Plaintiff upon his transfer to the HRYCI. The Complaint does not contain the date that the surgery was denied, and it may be that the claims against CCS are not viable, given that the last day it provided medical service to the Delaware Department of Correct was June 30, 2014. Because it is possible that Plaintiff may be able to state a claim against the foregoing medical defendants, he will be given leave to amend.

With regard to Coupe and Wesley, the U.S. Court of Appeals for the Third Circuit has concluded that prison administrators cannot be deliberately indifferent "simply

9

because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). The Third Circuit clarified that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236. The medical and mental health needs claims against Coupe and Wesley are frivolous and will be dismissed.

Plaintiff alleges in claim 5 that he was denied religious books and this infringed upon his ability to exercise his religion. When a prisoner claims that his right to exercise religion has been curtailed, a court must determine as a threshold matter whether the prisoner has alleged a belief that is "both sincerely held and religious in nature." *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000). If so, the court must then apply the four-factor test set forth in *Turner v. Safley*, 482 U.S. 78 (1987), to determine whether the curtailment at issue is "reasonably related to penological interests." *DeHart*, 227 F.3d at 51. At this juncture, the Court finds that Plaintiff has adequately alleged a free exercise of religion claim. He will be allowed to proceed against Coupe, Wesley, and Gibson on this claim.

Finally, Plaintiff alleges that several of his religious books were stolen when he was transferred to the hole. These allegations do not rise to the level of a constitutional

violation. See *Parratt v. Taylor*, 451 U.S. 527, 542 (1981) (a prisoner's due process claim based on random and unauthorized deprivation of property by a state actor is not actionable under § 1983, whether the deprivation is negligent or intentional, unless there is no adequate post-deprivation remedy available). Plaintiff has available to him the option of filing a common law claim for conversion of property. Inasmuch as Delaware law provides an adequate remedy for plaintiff, he cannot maintain a cause of action pursuant to § 1983. *See Hudson v. Palmer*, 468 U.S. 517, 535 (1984); *Nicholson v. Carroll*, 390 F. Supp. 2d 429, 435 (D. Del. 2005). The Court will dismiss the claim.

For the above reasons, the Court will: (1) dismiss claims three and four, the medical needs and mental health claims, as frivolous and for failure to state a claim upon which relief may be granted pursuant to U.S.C. § 1915(e)(2)(B)(i) and (ii) and § 1915A(b)(1), and will give Plaintiff leave to amend claims three and four against only John Doe nurses, Michelle, Tamira, CCS, and Connections; (2) dismiss claims two and six, the conditions of confinement claims, and the personal property claim (theft of books) as frivolous pursuant to U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1); (3) allow Plaintiff allowed to proceed with claim one, the mail interference claims, against Coupe and Wesley; and (4) allow Plaintiff to proceed with claim five, the free exercise of religion claim, against Coupe, Wesley, and Gibson.

An appropriate order will be entered.